Filed 12/7/22  In re M.A. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.A., a Person Coming Under the Juvenile Court Law. | B316262 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 20CCJP03224A |
| Plaintiff and Respondent, | |
| v. | |
| DIANA P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephen C. Marpet, Juvenile Court Referee. Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother Diana P. appeals the juvenile court's order terminating her parental rights to her child, M.A. M.A.'s presumed father, Jose A., is not a party to this appeal. Mother's sole contention on appeal is that the trial court erred in finding the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) did not apply because the Los Angeles County Department of Children and Family Services (Department) made an inadequate initial inquiry concerning M.A.'s relevant ancestry by failing to discuss the topic with M.A.'s grandmothers with whom the Department had contact. We affirm.

## BACKGROUND

### 1.    Overview of Proceedings

This dependency proceeding began in June 2020, two and a half years ago, when M.A. was a newborn. He was detained under Welfare and Institutions Code section 300, subdivision (b)(1), because he and mother both tested positive for marijuana and amphetamines at his birth and father knew of mother's prenatal drug use but failed to prevent it. M.A. was immediately placed with his paternal grandmother.

The court ordered M.A. removed from the parents and denied reunification services to father, who was largely absent from the process. It conditionally ordered mother reunification services if she contacted the Department, which she later did, and services were provided. However, mother failed to reunify with M.A. The court terminated parental rights and ordered adoption by paternal aunt and her husband as M.A.'s permanent plan.

### 2.    Facts Relevant to ICWA Inquiry

The Department's initial contact with parents was in person in June 2020 at the hospital following M.A.'s birth. The

detention report does not reflect that the Department inquired about Indian ancestry at that time. The Department's form ICWA-010(A) reflects that, as of a few days after this initial contact, no Indian child inquiry had been made.

In its September 2020 jurisdiction/disposition report, the Department reported difficulty locating mother and father but had met once with mother in person outside of a restaurant. The report does not refer to any Indian ancestry inquiry at that time.

Despite extensive diligence and noticing efforts on the part of the Department, father never appeared before the juvenile court. Mother appeared for the first time at a hearing in April 2021. She did not file the form ICWA-020, but stated, through counsel, that she has no Indian ancestry as far as she knows. On this basis, the court found M.A. was not an Indian child but ordered parents to keep the Department, counsel, and the court apprised of any new information relating to possible ICWA status. We are directed to no evidence that any such information was later provided.

Paternal aunt appeared at the same April 2021 hearing that mother did but was not questioned about Indian ancestry on the record. However, a report by the Department made the same day said that the Department had asked her and a maternal uncle about possible Indian ancestry and that both denied Indian ancestry.

The Department also had contact with M.A.'s grandmothers from both sides of the family during its investigation. There is no indication that the Department discussed Indian heritage with these extended family members.

3

### 3. The Department's Request for Judicial Notice

The Department requests that we take judicial notice of a minute order from a 2015 proceeding involving a paternal half sibling of M.A. The minute order contains a finding that ICWA did not apply and refers to a "Parental Notification of Indian Status" as having been "signed and filed." The Department does not include in its request the referenced form. Mother opposes the Department's request.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) It is incumbent upon a state court administering a proceeding where child custody is at issue to inquire whether the subject child is an Indian child. The scope of the duty on the court, as well as certain participants in the proceeding, is defined by federal regulations and related state law. (See, e.g., 25 C.F.R. § 23.107 (2022); Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481.)

The duty of inquiry has three "phases." Mother claims error with the first. This phase—the "initial inquiry"—applies in every case. The initial inquiry requires the court and the Department to ask certain persons related to the proceedings about the child's possible Indian ancestry. (See Welf. & Inst. Code, § 224.2, subds. (a), (b), (c); *In re S.S.* (2022) 75 Cal.App.5th 575, 581; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The state law initial inquiry requirements exceed those imposed by federal law, which merely require the court to "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the

4

child is an Indian child" and instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.  (25 C.F.R. § 23.107(a) (2022).)

Where the "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"—comes into play.  (Welf. & Inst. Code, § 224.2, subd. (e)(2).)  Further inquiry requires more robust investigation into possible Indian ancestry.  (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.)

If further inquiry gives the court a "reason to know" a child is an Indian child, the third phase is triggered.  This phase requires that notice pursuant to ICWA be sent to the tribes to facilitate their participation in the proceedings.  (Welf. & Inst. Code, § 224.3, subd. (a)(1); *In re D.F.*, *supra*, 55 Cal.App.5th at p. 568.)

A juvenile court's finding that ICWA does not apply in a proceeding implies that (a) neither the Department nor the court had a reason to know or believe the subject child is an Indian child; and (b) the Department fulfilled its duty of inquiry.  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order.  [Citations.]  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*In re Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.)

Mother's claim of error is that the juvenile court found the ICWA inapplicable even though the Department had contact with grandmothers from both sides of M.A.'s family yet failed to ask them about Indian ancestry. We agree that the Department failed in its initial inquiry obligation imposed by California law to ask "extended family members" whether M.A. is, or may be, an Indian child. (Welf. & Inst. Code, § 224.2, subd. (b).) The Department only asked paternal aunt and maternal uncle about Indian heritage and the court asked mother—the only appearing parent—about Indian heritage at a hearing attended by the Department. In the absence of evidence the Department complied with its section 224.2, subdivision (b) duty to inquire of all extended family members with whom it had contact, the court's finding that ICWA does not apply is error. (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)

However, because the court's error is one of state law, we can reverse only if the error was prejudicial. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*), citing Cal. Const., art. VI, § 13.)

Courts are divided on what showing of prejudice warrants reversal for initial inquiry errors. "Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or other affirmative assertion of Indian heritage on appeal." (*In re S.S., supra,* 75 Cal.App.5th at pp. 581–582, citing cases.) Others have excused such a showing, effectively treating failure to inquire as error per se. (See, e.g., *In re Y.W.* (2021)

6

70 Cal.App.5th 542, 556; *In re J.C.* (2022) 77 Cal.App.5th 70, 80.) The Fourth Appellate District in *Benjamin M.*, *supra*, 70 Cal.App.5th 735, took a third approach, concluding that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) Our court recently took a fourth approach, concluding initial inquiry errors require reversal only when the record of proceedings in the court or a proffer of evidence made on appeal suggests a reason to believe that the child may be an Indian child. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.)

We have previously rejected the error per se line of cases. (*In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099.) Under any of the other three lines of cases, the court's error here was harmless.

On the record before us, there is no reason to believe there is readily available information that is likely to bear meaningfully on whether M.A. has Indian ancestry. Mother appeared and denied knowledge of any Indian ancestry. Mother's lack of Indian ancestry was corroborated by her brother, maternal uncle, who denied Indian ancestry to the Department and further denied that anyone on mother's side of the family is "registered to a tribe." Although father was absent from the proceedings, the Department made an inquiry as to M.A.'s paternal heritage by inquiring with father's sister. Paternal aunt denied having Indian ancestry. As such, this case is unlike *Benjamin M.* There, like here, the father was absent from the

7

proceedings. But no person from the father's side of the family had been asked about Indian ancestry. With information about ancestry on the father's side completely "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) The inquiry for which remand was ordered in *Benjamin M.* was already made here and revealed no Indian ancestry.

Further, the record gives no reason to believe that maternal grandmother or paternal grandmother, each of whom the Department spoke with, would have better information about parents' ancestry than mother, maternal uncle, or paternal aunt did. Maternal uncle who denied Indian heritage lives with maternal grandmother, suggesting they are likely to share knowledge of their ancestry. Likewise, paternal aunt who denied Indian heritage lives on the same property as paternal grandmother.

Finally, no one has suggested there is any reason to believe M.A. might have Indian ancestry. Certainly, mother has made no offer of proof that he is an Indian child. Instead, she represented on the record that he has no Indian heritage. Paternal uncle similarly denied Indian heritage on father's side of the family.

Given the absence of any evidence or claim that M.A. might have Indian ancestry, mother's "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated [M.A.'s] Indian ancestry" does not support a finding of prejudice. (*In re Darian R.*, *supra,* 75 Cal.App.5th at p. 510.)

8

As we reach this conclusion without reference to the facts as to which the Department sought judicial notice, we deny the Department's request as moot.

## DISPOSITION

The Department's request for judicial notice is denied.  The juvenile court's order terminating parental rights is affirmed.


GRIMES, Acting P. J.


I CONCUR:


HARUTUNIAN, J.*

---

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9

**WILEY, J., Dissenting.**

 This is my 12th dissent on this issue. The regularity with which we confront this same problem should occasion concern and dismay rather than a resigned sense of inevitable normalcy. The Department could avoid this problem with nearly no effort and could spare these children and those who love them the delay and uncertainty that now attends this litigation.


     WILEY, J.